UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.:

CHARLA BEAUVAIS,                                )
                                                )
                  Plaintiff,                     )
                                                )
v.                                              )
                                                )
AMISIAL MEDSPA LLC and EDY                      )
AMISIAL,                                        )
                                                )
                  Defendants.                    )
                                                )
                                                )
_____)

## **COMPLAINT**

Plaintiff CHARLA BEAUVAIS ("Plaintiff") and other similarly situated individuals sue

defendants AMISIAL MEDSPA LLC and EDY AMISIAL ("Defendants") and allege:

### I.    JURISDICTION

1.    This is an action to recover money damages for unpaid overtime wages under the

laws of the United States pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201-219 ("FLSA"),

and for violation of Section 448.102, Florida Statutes.

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C.

§ 1343(3) and (4) and 28 U.S.C. § 2617.

3.    This Court has supplemental jurisdiction over the related state law claims pursuant

to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under

Article III of the United States Constitution. Plaintiff's state law claims share all common operative

facts with their federal law claims, and the parties are identical. Resolving Plaintiff's federal and

state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

## II.   VENUE

4.   The Corporate Defendant, Amisial MedSpa is a corporation duly authorized and existing under the laws of the State of Florida and conducting business in Miami-Dade County, Florida.

5.   Defendant Edy Amisial (the "Dr. Amisial") is the owner and/or officer of the Corporate Defendant, and he had an office and does business in Miami-Dade County, Florida. At all times material hereto, the Individual Defendant was and is engaged in interstate commerce.

6.   The Plaintiff is a resident of Broward County.

7.   The acts or omissions giving rise to this Complaint occurred in whole or in part in Miami-Dade, Florida.

8.   Venue is proper under 28 U.S.C. § 1391(b) because the acts complained of occurred within this judicial district and because the Defendant has its principal place of business within the district, resides in the judicial district and because the employment records of the Plaintiff are stored or have been administered, in Miami-Dade, Florida.

## III.   GENERAL ALLEGATIONS

9.   Ms. Beauvais experienced administrator with nearly 8 years of experience working in the field.

10.   On or about May 5, 2022, Ms. Beauvais began working for Defendants, and was told that she was hired as the Office Administrator, and she would make $20.00 per hour.

11.   During Ms. Beauvais' first week of work, on or about May 5th and 9th, 2022, Dr. Amisial administered Botox and fillers on patients, and instructed Ms. Beauvais to assist as his

medical assistant. During the medical procedures, Ms. Beauvais noticed that Dr. Amisial picked up gauzes from the floor, and used it on the patient. Ms. Beauvais also noticed that on both occasions, Dr. Amisial left the patient's room in disarray, with syringes on the floor as opposed to properly disposing them, and left gauzes on the floor that were contaminated with the patient's blood. Ms. Beauvais additionally noticed that there was no red biohazard bin in the patient's room.

12.     Ms. Beauvais was fearful for her safety and did not want to come into contact with the waste.

13.     On or about May 10, 2022, when Ms. Beauvais arrived at work the janitor, Valorie ULN, made a complaint to her about needles being left around in the office. Ms. Beauvais told Valorie that she would speak with the doctor about it because she also had an issue with needles being left around.

14.     On this same day, Ms. Beauvais spoke with Dr. Amisial as soon as she saw him. Ms. Beauvais complained to Dr. Amisial that the office required more red biohazard disposal bins. She complained that Dr. Amisial was not disposing the needles immediately after they are used on patients, as he is required to do.

15.     Shortly after Ms. Beauvais complained to Dr. Amisial and objected, Dr. Amisial requested Ms. Beauvais assist him with a patient who requested Botox, fillers, and Platelet-Rich Plasma("PRP") procedures. When Dr. Amisial made his request, notwithstanding Ms. Beauvais' complaints and objections, made earlier and then again at the time of Dr. Amisial's request, Dr. Amisial disregarded Ms. Beauvais' concerns and demanded she assist him with the medical procedure.

16.     During the procedure, Dr. Amisial began to draw the patient's blood and attempted to transfer the blood into the correct tube, but ended up spilling the patient's blood all over the

area. Ms. Beauvais immediately backed up into the corner because she felt that her health was in risk.

17.     Thereafter, Dr. Amisial changed his gloves as if nothing happened, placed the tube in the PRP machine. The machine spun the blood and Dr. Amisial went through with the procedure as if nothing had happened. When the machine finished spinning, he left the tube covered in blood on the outside in the machine. Ms. Beauvais inquired if he was going to properly dispose of the tube and Dr. Amisial stated "yes." Shortly after, Ms. Beauvais began to feel very uncomfortable, and once again requested Dr. Amisial to sanitize the room. Once again, Dr. Amisial replied "yes" but never sanitized the room.

18.     Dr. Amisial never changed his conduct. Despite Ms. Beauvais' complaints and objections, Dr. Amisial continued to leave syringes, needles and used gauzes out, and not discarded, and patient blood exposed.

19.     Then, on May 16, 2022, while Ms. Beauvais was speaking with Janitor Valorie and Dr. Michelle Isma Joseph, the second medical provider of Amisial MedSpa ("AMS"). Ms. Beauvais complained about the Dr. Amisial unsanitary conduct to Janitor Valorie and Dr. Joseph. During the same discussion, Janitor Valorie complained to Ms. Beauvais and Dr. Joseph about Dr. Amisial unsanitary conduct. In response, Dr. Joseph stated she would speak to Dr. Amisial regarding the improper disposal of biohazard medical waste.

20.     After her discussion with Janitor Valorie and Dr. Joseph, Ms. Beauvais went to the room where the blood had spilled on May 9, 2022 to verify if the room was still contaminated with the exposed blood. Sure enough, there was still blood underneath the cabinet and the blood drawn from the patient was still left in the PRP machine seven (7) days after the incident.

21.     Ms. Beauvais, concerned with patients' wellbeing, avoided placing any other patients in the contaminated room for any of the consultations scheduled the rest of the day. Nevertheless, days went by and Dr. Amisial would place patients in that room exposing to the biohazard medical waste.

22.     Dr. Amisial did not perform another Botox procedure until May 19, 2022. Ms. Beauvais was not present in the patient's room and stayed away from the room with the patient as she had requested. After the patient left, Ms. Beauvais went to clean up the room to get it ready for the next patient, and found that syringes and needles were left exposed again.  Ms. Beauvais left the room and spoke with Dr. Amisial once more regarding the improper disposal of biohazard medical waste.

23.     On May 25, 2022, once again, Dr. Amisial performed a Botox procedure and did not properly dispose of the biohazard medical waste. Dr. Joseph proceeded to take pictures of the exposed needles and syringes.

24.     A few days later, on or about May 27, 2022, when Ms. Beauvais went to place her food in the mini-fridge located in the breakroom, she observed specimens that weren't picked up the day before in the fridge along with other medications.

25.     Thereafter, on the following business day, May 31, 2022, after Dr. Amisial's Botox and Fillers medical procedure on a patient, Ms. Beauvais went to prepare the room for the next patient and noticed that once again Dr. Amisial left syringes and needles exposed in the patient's room. At this moment Ms. Beauvais decided to start documenting the improper disposal of biohazard medical waste and taking pictures since it remained an ongoing issue without correction.

26.     On June 1, 2022, after Ms. Beauvais once again requested that Dr. Amisial dispose the syringes, needles and used gauzes, Dr. Amisial called Ms. Beauvais into his office and scolded

and threatened her. Specifically, Dr. Amisial said to Ms. Beauvais that "he is the big boss" and that she "was not going to last long there".

27.     After the June 1, 2022, Ms. Beauvais was fearful that she would lose her job.

28.     Ms. Beauvais continued to perform her duties as usual.  The afternoon of that same day, June 1, 2022, Dr. Amisial attended another patient for Botox and fillers.  After the treatment, while preparing the room for another patient. Ms. Beauvais noticed that Dr. Amisial once again did not properly dispose of the biohazard medical waste. Ms. Beauvais complained and took pictures, but nothing changed.

29.     During a staff meeting on June 13th, 2022, Dr. Amisial made several hostile and humiliating remarks towards Ms. Beauvais and stated that the staff had to work overtime no matter what. Ms. Beauvais responded by stating that she could not work overtime and inquiring about the pay for overtime since he had not paid per one- and one-half times her regular rate of pay (*i.e.*, overtime) when she previously worked more than 40 hours in a workweek.

30.     Dr. Amisial became noticeably upset and, with anger, again made hostile and humiliating remarks about Plaintiff, and then preceding to terminate Ms. Beauvais by stating that she did not have a place at the Corporate Defendant's business and that she was terminated from her employment with AMS.

31.     Throughout her employment, Ms. Beauvais worked approximately 10.75 hours per week, without being properly paid one and a half times her regular rate of pay for all hours worked in a workweek.

32.     All conditions precedent to bringing this action have occurred, been performed or been excused.

33.     The Plaintiff has retained the undersigned counsel in order that his/her rights and interests may be protected. The Plaintiff has become obligated to pay the undersigned a reasonable attorneys' fee.

## COUNT I: RETALIATION – FPWA 448.102

34.     The Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1- 33 as if fully set forth herein.

35.     Florida Statutes provide:

448.102   Prohibitions. —An employer may not take any retaliatory personnel action against an employee because the employee has:

…

(3) Objected to, or refused or participated in, any activity, policy, or practice of the employer which is in violation of a law, rule or regulation.

36.     The Plaintiff objected to or refused to participate in the Defendant's activity of improperly disposing of medical waste, when she complained to Dr. Amisial and Dr. Joseph on multiple occasions. Instead of correcting the wrongs objected to or refused by the Plaintiff, the Defendant fired Plaintiff.

37.     Improper disposal of medical waste is a violation of Section 381.0098, Florida Statutes – Biomedical Waste and Chapter 64E-16, of the Florida Administrative Code ("FAC") and OSHA Interpretation Letter dated June 2, 2009, authored by Richard E. Fairfax, Director of Directorate of Enforcement Programs.

38.     The Defendant fired the Plaintiff because she objected to or refused to participate in the Defendant's improper disposal of medical waste, which is a violation of the law.

39.     The firing of the Plaintiff is a wrongful act in violation of the Florida Whistle-blower's Act, Section 448.102(3), Florida Statutes.

40.     As a direct result of Defendant's unlawful actions, the Plaintiff has been damaged.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a.  Reinstate the Plaintiff to the same position held before the Defendant's retaliatory action against the Plaintiff, or to an equivalent position;

b.  Reinstate the Plaintiff's full fringe benefits and seniority rights;

c.  Award compensation for lost wages, benefits, mental damages, and other remuneration;

d.  Order payment by the Defendant of the Plaintiff's reasonable costs and attorneys' fees of this action pursuant to Section 448.104, Florida Statutes;

e.  Issue an order prohibiting the Defendant from discharging individuals who refuse to engage in or object to practices which violate Florida law; and

f.  Such further relief as the Court deems just and proper.

## COUNT II: UNPAID OVERTIME (CORPORATE DEFENDANT) – FLSA

41.     The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 33 above as if set out in full herein.

42.     The Plaintiff is a covered employee for purposes of the FLSA.

43.     This action is brought by the Plaintiff to recover from the Corporate Defendant unpaid overtime compensation, as well as an additional amount as liquidated damages, costs, and reasonable attorneys' fees under the provisions of 29 U.S.C. § 201 et seq., and specifically under the provisions of 29 U.S.C. § 207. Section 207(a)(1) of the FLSA states: "No employer shall employ any of his employees . . . for a work week longer than 40 hours unless such employee receives compensation for his employment in excess of the hours above-specified at a rate not less than one and a half times the regular rate at which he is employed."

44.     Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b). The Corporate Defendant is and, at all times pertinent to this Complaint, was engaged in interstate commerce.

45.     At all times pertinent to this Complaint, the Corporate Defendant operated as an organization which sold and/or marketed its services and/or goods to customers from throughout the United States and also provided its services for goods sold and transported from across state lines of other states, and the Corporate Defendant obtained and solicited funds from non-Florida sources, accepted funds from non-Florida sources, used telephonic transmissions going over state lines to do its business, transmitted funds outside the State of Florida, and otherwise regularly engaged in interstate commerce, particularly with respect to its employees.

46.     Upon information and belief, the annual gross revenue of the Corporate Defendant was at all times material hereto in excess of $500,000 per annum, and/or the Plaintiff and those similarly situated, by virtue of working in interstate commerce, otherwise satisfy the FLSA's requirements.

47.     By reason of the foregoing, the Corporate Defendant is and was, during all times hereafter mentioned, an enterprise engaged in commerce or in the production of goods for commerce as defined in §§ 3(r) and 3(s) of the FLSA and/or the Plaintiff was engaged in interstate commerce for the Corporate Defendant. The Corporate Defendant's business activities involve those to which the Act applies. The Corporate Defendant is a Medical Spa and, through its business activity, affects interstate commerce. The Plaintiff's work for the Corporate Defendant likewise affects interstate commerce. Plaintiff was employed by the Corporate Defendant as an office administrator for the Corporate Defendant's business.

48.     While employed by the Corporate Defendant, the Plaintiff worked approximately an average of 50.75 hours per week without being compensated at the rate of not less than one- and one-half times the regular rate at which she was employed.

49.     The Plaintiff worked for the Corporate Defendant from approximately May 5, 2022 to June 13, 2022. In total, the Plaintiff worked approximately 5.5 compensable weeks under the FLSA.

50.     The Corporate Defendant paid the Plaintiff on average approximately $20.00 per hour.

51.     However, the Corporate Defendant did not properly compensate the Plaintiff for hours that the Plaintiff worked in excess of 40 per week.

52.     The Plaintiff seeks to recover unpaid overtime wages accumulated from the date of hire.

53.     Prior to the completion of discovery and to the best of the Plaintiff's knowledge, at the time of the filing of this Complaint, the Plaintiff's good faith estimate of her unpaid overtime wages is as follows:

a.   Actual Damages: $1,773.75

i.      Calculation: $20.00 (hourly pay) x 1.5 (overtime rate) x 10.75 (approximate number of overtime hours) x 5.5 (compensable weeks) = $1,773.75;

b.   Liquidated Damages: $1,773.75.

c.   Total Damages: $ 3,547.50 plus reasonable attorneys' fees and costs of suit.

54.     At all times material hereto, the Corporate Defendant failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that the Plaintiff performed services and worked in excess of the maximum hours provided by the FLSA, but no provision was

made by the Corporate Defendant to properly pay them at the rate of time-and-one-half for all hours worked in excess of forty hours (40) per workweek as provided in the FLSA.

55.     The Corporate Defendant knew and/or showed reckless disregard of the provisions of the FLSA concerning the payment of overtime wages and remains owing the Plaintiff these overtime wages since the commencement of the Plaintiff's employment with the Corporate Defendant as set forth above, and the Plaintiff is entitled to recover double damages. The Corporate Defendant never posted any notice, as required by Federal Law, to inform employees of their federal rights to overtime and minimum wage payments.

56.     The Corporate Defendant willfully and intentionally refused to pay the Plaintiff overtime wages as required by the laws of the United States as set forth above and remains owing the Plaintiff these overtime wages since the commencement of the Plaintiff's employment with the Corporate Defendant as set forth above.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a.  Enter judgment for the Plaintiff against the Corporate Defendant on the basis of the Corporate Defendant's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

b.  Award the Plaintiff actual damages in the amount shown to be due for unpaid wages and overtime compensation for hours worked in excess of forty weekly; and

c.  Award the Plaintiff an equal amount in double damages/liquidated damages; and

d.  Award the Plaintiff reasonable attorneys' fees and costs of suit; and

e.  Grant such other and further relief as this Court deems equitable and just.

## COUNT III: UNPAID OVERTIME (INDIVIDUAL DEFENDANT) – FLSA

57.     The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-33 above as if set out in full herein.

58.     The Plaintiff is a covered employee for purposes of the FLSA.

59.     At the times mentioned, the Individual Defendant was, and is now, the owner of the Corporate Defendant. The Individual Defendant was an employer of the Plaintiff within the meaning of Section 3(d) of the FLSA in that the Individual Defendant acted directly or indirectly in the interests of the Corporate Defendant in relation to the employees of the Corporate Defendant, including the Plaintiff. The Individual Defendant had operational control of the Corporate Defendant, was involved in the day-to-day functions of the Corporate Defendant, provided the Plaintiff with her work schedule, and is jointly liable for the Plaintiff's damages.

60.     The Individual Defendant is and was at all times relevant a person in control of the Corporate Defendant's financial affairs and could cause the Corporate Defendant to compensate (or not to compensate) its employees in accordance with the FLSA.

61.     The Individual Defendant willfully and intentionally caused the Plaintiff not to receive overtime compensation as required by the laws of the United States as set forth above and remains owing the Plaintiff these overtime wages since the commencement of the Plaintiff's employment with the Corporate Defendant as set forth above.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a.  Enter judgment for the Plaintiff against the Individual Defendant on the basis of the Defendants' willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

b.  Award the Plaintiff actual damages in the amount shown to be due for unpaid wages and overtime compensation for hours worked in excess of forty weekly; and

c.  Award the Plaintiff an equal amount in double damages/liquidated damages; and

d.  Award the Plaintiff reasonable attorneys' fees and costs of suit; and

e.  Grant such other and further relief as this Court deems equitable and just.

## JURY TRIAL DEMAND

The Plaintiff and those similarly situated demand trial by jury of all issues so triable as of right.

Dated: November 11, 2022.

Respectfully submitted,

By: **/s/ Juliana Cortes**
Juliana Cortes, Esquire
Fla. Bar No.:  0123038
Email: juliana@saenzanderson.com
Tanesha Blye, Esquire
Fla. Bar No.:  738158
Email: tblye@saenzanderson.com
R. Martin Saenz, Esquire
Fla. Bar No.: 0640166
Email: msaenz@saenzanderson.com

SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
*Counsel for Plaintiff*