UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-23708-WILLIAMS/REID

CHARLA BEAUVAIS,

    Plaintiff,

v.

AMISIAL MEDSPA, LLC, *et al.*,

    Defendants.

_____/

**REPORT AND RECOMMENDATION ON
MOTION FOR FINAL DEFAULT JUDGMENT**

This cause is before the Court on Plaintiff Charla Beauvais's ("Plaintiff") Motion for Final Default Judgment (the "Motion"). [ECF No. 28]. For the reasons addressed below it is **RECOMMENDED** that the Motion be **GRANTED in part and DENIED in part**.

**BACKGROUND**

This is an action for wrongful retaliatory discharge under the Florida Private Whistleblowers Act ("FWA") (Count I) and for overtime wages under the Fair Labor Standards Act ("FLSA") (Counts II and III). Plaintiff alleges that Defendants, Amisial Medspa LLC ("Medspa") and Edy Amisial ("Dr. Amisial"), failed to pay her overdue overtime wages and wrongfully fired her after she complained multiple times about Dr. Amisial's improper disposal of biohazard medical waste. *See generally* [ECF No. 1].

Plaintiff alleges that she began working for Defendants on May 5, 2022, as an office administrator at the rate of $20 per hour. [*Id.* at 2]. Within her first week, Plaintiff began assisting Dr. Amisial as a medical assistant, and noticed that Dr. Amisial engaged in various hazardous

1

medical practices including: (1) using gauze that had fallen on the floor on a patient; (2) leaving used syringes on the floor in the patient rooms; (3) leaving gauze contaminated with the patient's blood on the floor; and (4) not keeping a red biohazard bin in the patient's room. [*Id.* at 2–3]. During another procedure, Dr. Amisial spilled a patient's blood while drawing it, did not dispose of the blood-covered tube nor clean and sanitize the room. [*Id.* at 3–5]. Plaintiff expressed her concerns to Dr. Amisial multiple times, and she also spoke with the second doctor at the Medspa about Dr. Amisial's conduct. [*Id.* at 3–4].

Plaintiff claims that rather than changing these practices, on June 1, 2022, Dr. Amisial scolded and threatened that "she was not going to last long there" when she requested that he dispose of syringes, needles, and used gauzes. [*Id.* at 5–6]. On June 13, during a staff meeting, Dr. Amisial made several hostile remarks towards Plaintiff and stated that the staff must work overtime. [*Id.* at 6]. When Plaintiff responded that she was unable to work overtime and inquired about her prior unpaid overtime, Dr. Amisial became upset, made hostile remarks about her, and terminated her employment. [*Id.* at 6].

Consequently, Plaintiff filed the instant Complaint on November 11, 2022, in which she asserts three counts: (1) retaliation under Fla. Stat. § 448.102(3); and (2) two counts of unpaid overtime against both Defendants under 29 U.S.C. § 207(a)(1). *See* [*Id.*]. On November 14, 2022, Plaintiff properly served both Defendants with the summons, civil cover sheet, and the Complaint in accordance with Federal Rule of Civil Procedure 4.[1] [ECF No. 3].

Defendants did not file a response to the Complaint, and the Clerk entered default against them pursuant to Federal Rule of Civil Procedure 55(a). [ECF No. 15]. Before this Court could

---

[1] The Return of Service states that the process server directly served both Defendants by delivering to Dr. Amisial copies of the civil cover sheet, summons, and Complaint. [ECF Nos. 6; 7]. This is proper service. *See* Fed. R. Civ. P. 4(e)(2)(A), (h)(1)(A).

2

enter final default judgment, attorneys for Defendants filed an appearance. [ECF No. 17; 19]. The parties stipulated to vacate the default judgment and the deadline for responses was reset to February 27, 2023. [ECF No. 24]. Subsequently, Defendants' attorneys withdrew from the case and Edy Amisal, who appeared before the court at the hearing on the motion to withdraw, was given 30 days to obtain replacement counsel. [ECF No. 23, 25]. Defendants have not obtained counsel nor filed any response to the Complaint, however, and at the Court's instruction the Clerk entered a second default against Defendants pursuant to Federal Rule of Civil Procedure 55(a). [ECF No. 27].

Plaintiff now moves for entry of final default judgment against Defendants. She seeks damages in the amount of $52,985.75, which is comprised of $3,547.50 in unpaid overtime, including liquidated and unliquidated damages under the FLSA, $31,200 in back wages ($800 x approximately 39 weeks since her termination on June 13, 2022) under the FWA, and $17,556.25 in attorneys' fees, and $682.00 in costs. In support of its request, Plaintiff has provided a declaration as to attorneys' fees and an invoice containing time entries for work completed in this case. [ECF No. 28 at 18–32].

## LEGAL STANDARD

"Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment." *Cleveland v. JH Portfolio Debt Equities, LLC*, No. 19-00286-B, 2020 WL8167356, at *2 (S.D. Ala. Nov. 23, 2020). "First, when a defendant fails to plead or otherwise defend the lawsuit, the Clerk of Court must enter a clerk's default against the defendant." *Id.* "Second, when the requirements for a clerk-entered default judgment cannot be met under Rule 55(b)(1), the plaintiff must apply to the court for a default judgment under Rule 55(b)(2)." *Id.*

Under Rule 55(b)(2), a court may enter default judgment against a defendant who has failed to defend the lawsuit. *See* Fed. R. Civ. P. 55(b)(2).

"[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The Eleventh Circuit has explained that there is a sufficient basis in the pleadings when the complaint could survive a motion to dismiss for failure to state a claim. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015). By defaulting, the defendant has admitted the plaintiff's well-pleaded factual allegations. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

## DISCUSSION

Here, there is a sufficient basis for default judgment because Plaintiff's FLSA and FWA claims could survive a motion to dismiss for failure to state a claim. *See Surtain*, 789 F.3d at 1245; [ECF No. 1]. However, Plaintiff has failed to provide support for her request for $31,200 in lost wages under the FWA. Also, necessary information is missing for this Court to assess the reasonableness of the amount of attorneys' fees requested. *See Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988); *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996).

A. **Final Default Judgment for Plaintiff's FLSA Claims Is Proper**

FLSA claims for unpaid wages are straightforward. The FLSA requires that employers pay their employees at least one and one-half times their regular rate for every hour worked in excess of forty hours per week. 29 USC § 207(a)(1). "An unpaid-overtime claim has two elements: (1) an employee worked unpaid overtime, and (2) the employer knew or should have known of the overtime work." *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015). To

4

establish a claim, "an employee must allege (1) an employment relationship; (2) that the employer or employee engaged in interstate commerce; and (3) that the employer failed to pay overtime compensation and/or minimum wages." *Ray v. Adams and Assocs. Inc.*, 599 F. Supp. 3d 1250, 1256 (S.D. Fla. 2022). An employer who violates Section 207 is liable to the affected employee for the amount of their unpaid overtime wages and may be additionally liable for an equal amount as liquidated damages. 29 U.S.C. § 216(b).

Plaintiff adequately alleges an employment relationship between herself and Defendants. Plaintiff puts forth in her complaint that she worked for Defendants as an office administrator from May 5, 2022, until June 13, 2022, at an hourly rate of $20 per hour. [ECF No. 1 at 2, 10]. Finally, Plaintiff asserts that Dr. Amisial acted in the Medspa's interests and controlled the operations of the Medspa. [*Id.* at 12]. An employment relationship clearly existed under the FLSA. *See Ray*, 599 F. Supp. 3d at 1256.

Plaintiff also adequately alleges that Defendants were engaged in interstate commerce. Plaintiff alleges that Medspa engaged in interstate commerce because it obtained, solicited, and accepted funds from outside the State of Florida, used telephonic transmissions over state lines to do its business, and transmitted funds outside the State of Florida. [ECF No. 1 at 9]; *see Ray*, 599 F. Supp. 3d at 1256. She also avers that upon information and belief, the annual gross revenue of Medspa was in excess of $500,000 per annum, and/or by virtue of working in interstate commerce, Medspa otherwise satisfy the FLSA's requirements.

Finally, Plaintiff states that she worked unpaid overtime, that the employer knew or should have known of the overtime, and that the employer failed to pay overtime compensation. Plaintiff worked an average of 50.75 hours per week without being compensated for the hours worked in excess of 40 hours. [ECF No. 1 at 10]. Plaintiff contends that Defendants knew or should have

known about the overtime hours worked because Dr. Amisial allegedly required all staff to work overtime during the staff meeting on June 13, 2022. [*Id.* at 6]. Further, Plaintiff told Dr. Amisial during the staff meeting that she could not work more overtime hours and had not received prior overtime compensation. [*Id.*]. Plaintiff explains that she worked in excess of 40 hours per week and was not paid overtime, that Defendants knew or should have known that she had worked overtime hours and had not been compensated. *See Ray*, 599 F. Supp. 3d at 1256; *Bailey*, 776 F.3d at 801. In conclusion, Plaintiff's FLSA claims state a plausible claim for relief that could survive a motion to dismiss

Plaintiff has also calculated the damages owed to her by Defendants under the FLSA. She explains that she had worked approximately 10.75 hours of overtime during her 5.5 weeks of employment and, as a result, was owed $1,773.75 in actual damages. She also alleges Defendants willfully and intentionally refused to pay her overtime wages as required by the FLSA and therefore she is entitled to recover double damages for a total of $3,547.50.

Therefore, this Court should enter a default judgment on Counts II and III of the Complaint in the amount of $3,547.50 in damages.

**B. Final Default Judgment for Plaintiff's FWA Claim Is Proper**

The FWA provides employees with a cause of action against employers who take certain types of retaliatory action against their employees. Under this Florida statute, "[a]n employer may not take any retaliatory personnel action against an employee because the employee has: . . . (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.192(3). "To establish a prima facie case under the FWA, a plaintiff must show that: (1) he objected to or refused to participate in any illegal activity, policy or practice of the employer; (2) he suffered an adverse employment action; and (3)

6

the adverse employment action was causally linked to his objection or refusal." *LE Publ'ns, Inc. v. Kohl*, 298 So.3d 642, 645 (Fla. Dist. Ct. App. 2020); *see also Butterfield v. JetBlue Airways Corp.*, No. 20-13473, 2022 WL 291003, at *4 (11th Cir. Feb. 1, 2022).

The State of Florida grants rulemaking authority to the Florida Department of Health to "regulate the packaging, transport, storage, and treatment of biomedical waste." Fla. Stat. § 381.0098(1) (2022). "Any person or public body in violation of this section or rules adopted under this section is subject to penalties . . . ." Fla. Stat. § 381.0098(7).

Florida statute and administrative code define a "biomedical waste generator" as "a facility or person that produces or generates biomedical waste." Fla. Stat. § 381.0098(2)(b); *see* Fla. Admin. Code Ann. r. 64E-16.002(3) (2022) "Biomedical waste" is also defined both by statute and by administrative code. By statute, "'[b]iomedical waste' means any solid or liquid waste which may present a threat of infection to humans. The term includes, but is not limited to, . . . discarded disposable sharps; human blood, blood products, and body fluids." Fla. Stat. § 381.0098(2)(a). The Florida Administrative Code also includes blood, blood products, and discarded sharps in its definition of "biomedical waste." *See* Fla. Admin. Code Ann. r. 64E-16.002(2). In addition, "biomedical waste" includes used, absorbent materials saturated with blood or with dried blood and "[n]on-absorbent, disposable devices that have been contaminated with blood . . . but have not been treated by an approved method." Fla. Admin. Code Ann. r. 64E-16.002(2)(a), (b).

The Florida Administrative Code places many requirements on handling of biomedical waste. One requirement is that all biomedical waste facilities, including biomedical waste generators, decontaminate "all surfaces contaminated with spilled or leaked biomedical waste." Fla. Admin. Code Ann. r. 64E-16.003(1)(d); *see* Fla. Admin. Code Ann. r. 64E-16.002(9).

Biomedical waste, excluding sharps, must "be packaged and sealed at the point of origin" in special bags or in sharps containers. Fla. Admin. Code Ann. r. 64E-16.004(2)(c)1. Sharps must be "discarded at the point of origin into single use or reusable sharps containers." Fla. Admin. Code Ann. r. 64E-16.004(2)(d)1.

Here, Plaintiff adequately alleges that she objected to or refused to participate in any illegal activity, policy, or practice of the Defendants. *See LE Publ'ns, Inc.*, 298 So.3d at 645. Plaintiff sufficiently alleges multiple instances of the Medspa procedure room's contamination due to used syringes, bloody gauzes, and blood as a "practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.192(3); *see* Fla. Admin. Code Ann. r. 64E-16.003(1)(d); Fla. Admin. Code Ann. r. 64E-16.002(9); Fla. Admin. Code Ann. r. 64E-16.004(2)(c)1., (d)1.; [ECF No. 1 at 2–5]. After multiple occasions where Dr. Amisial did not dispose of or clean up biohazards, Plaintiff complained to Dr. Amisial about this issue or asked him to change his practices. [ECF No. 1 at 3–6]. She was required to assist Dr. Amisial with procedures despite her complaints about his improper waste disposal procedures and was concerned for her own health [*Id.*]. As a result of the biohazards, she avoided placing patients in contaminated rooms. [*Id.* at 5].

Plaintiff also contends that she suffered an adverse employment action because Dr. Amisial terminated her employment, due to her complaints, during the staff meeting on June 13, 2022. [ECF No. 1 at 6]; *see LE Publ'ns, Inc.*, 298 So.3d at 645. Finally, Plaintiff has shown that her termination is causally linked to her refusal to engage in Defendants' improper waste disposal practices because Dr. Amisial threatened and scolded her on multiple occasions. *See LE Publ'ns, Inc.*, 298 So.3d at 645. Specifically, Dr. Amisial threatened Plaintiff that she "was not going to last long" at the Medspa after she requested that he properly dispose of the syringes, needles, and used gauze. [ECF No. 1 at 5]. As such. Plaintiff adequately alleges a retaliation claim under the FWA.

Turning next to the question of damages under the FWA, Plaintiff claims entitlement to damages for "back wages" in the amount of $31,200. [ECF No. 28]. It appears Plaintiff has simply multiplied the weekly pay she received during her employment, $800.80, times approximately 39 weeks, the number of weeks from her termination until the filing of the motion for final default judgment. The FWA does provide for compensation of lost wages under Fla. Stat. § 448.103(2)(d). To award back pay, however, "the trial court must determine what the employee would have earned had she not been the victim ..., and must subtract from that figure the amount of actual interim earnings." *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So.3d 904, 914 (Fla. 4th DCA 2013) (quoting *E.E.O.C. v. Joe's Stone Crab, Inc.*, 15 F. Supp. 2d 1364, 1378 (S.D. Fla. 1998). To award front pay, the plaintiff must mitigate her damages by seeking employment "substantially equivalent" to the position from which she was terminated. [*Id.*]. Plaintiff has shown neither calculation here. Further, she has not alleged nor shown an inability to work because of her employer's violation of the FWA or an inability to obtain other suitable employment in the 39-week period after her termination. Here, she was employed by Defendants for approximately 5.5 weeks and was terminated after refusing to comply with her employer's request that she work in a hazardous environment, but alleged no further injury, as such, her request for damages for 39 weeks of pay, without more, fails.

In her Complaint, Plaintiff requested reinstatement to her position with "full fringe benefits and seniority rights" and, in addition to "back wages," she sought "benefits, mental damages, and other remuneration." [ECF No. 1]. Her Motion for Final Default Judgment, however, only requests money damages in the form of actual and liquidated damages under the FLSA and back wages under the FWA.

Accordingly, while granting final default judgment as requested in her Motion is appropriate, plaintiff has failed to provide supporting evidence for the amount of wages she requests.

**C. Attorneys' Fees**

The FLSA and the FWA permit prevailing plaintiffs to recover reasonable attorney's fees and costs from Defendants. 29 U.S.C. § 216(b); Fla. Stat. § 448.104. The Court must evaluate Plaintiff's requested attorney's fees for reasonableness in terms of the total hours expended by counsel and paralegals. *See Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). Plaintiff bears the burden to submit a request for fees that will enable the court to determine what time was reasonably expended. *Loranger v. Stierheim*, 10 F.3d 776, 782 (11th Cir. 1994).

The Eleventh Circuit has adopted the lodestar method to determine attorney's fees. *See generally Id.* at 781. Under the lodestar method, a reasonable attorneys' fee is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." To determine reasonable hourly rates in South Florida, a court may consider certain factors, including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (citing factors articulated in *Johnson v. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

Plaintiff provided time entries and a declaration of attorneys' fees as part of her Motion for Final Default Judgment. [ECF No. 28 at 17–32]. Plaintiff's declaration of attorneys' fees stated

that the attorneys' rates were set at $400 per hour, and that the law clerks' and paralegals' rates were set at $75 per hour. [*Id.* at 20]. The declaration also detailed the qualifications and experience of two attorneys of record in this case, Ruben Martin Saenz and Max L. Horowitz. [*Id.* at 18–20].

Despite this, necessary information from which this Court can determine the reasonableness of the fees is still missing. *See* [*Id.* at 17–32]. Specifically, the declaration does not include the names corresponding with the attorneys' initials listed in the billing record provided, nor is a key provided at the end of the billing record. [*Id.* at 17–32]. Further, the declaration does not provide any information about the qualifications for a major timekeeper (initialed in the billing records as "JC"), and there is no information on the law firm's website (referenced in the declaration) for the Court to assess the reasonableness of this attorney's fee. [*Id.* at 18–21, 23–26]. Consequently, the Court is unable to ascertain whether each timekeeper's hourly rate is reasonable. Although Plaintiff is entitled to reasonable attorneys' fees and costs, she must submit the documentation necessary to determine the reasonableness of such fees.

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that Plaintiff's Motion for Final Default Judgment [ECF No. 28] be **GRANTED in part** as to Counts I–III, but **DENIED** without prejudice with respect to its request for attorneys' fees and costs and **DENIED** with respect to the amount of lost wages Plaintiff requests under Count I. Plaintiff shall recover from Defendants as follows:

   a. $3,547.50 in damages for unpaid overtime wages and liquidated damages under the FLSA.

    b.    Interest shall accrue on this judgment pursuant to 28 U.S.C. § 1961, and shall be enforceable as prescribed by 28 U.S.C. §§ 2001-2007, 28 U.S.C. §§ 3001-3307, and Federal Rule of Civil Procedure 69(a).

It is further **RECOMMENDED** that Plaintiff be permitted to file a separate motion to recover its reasonable attorneys' fees and costs.

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Judge within **FOURTEEN DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**SIGNED** this 22nd day of May, 2023.

*[signature]*

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:    **U.S. District Judge Kathleen M. Williams**; and

        **All Counsel of Record**